UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

        Case No. 22-cr-20653
        Honorable Linda V. Parker

LORENZO HARRIS,

        Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION PURSUANT TO 28 U.S.C. § 2255 (ECF NO. 38)

On April 18, 2023, Defendant Lorenzo Harris pleaded guilty pursuant to a Rule 11 Plea Agreement to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (ECF No. 26.) Pursuant to the Plea Agreement, Harris waived his right to appeal his conviction on any ground, although he retained the right to raise ineffective assistance of counsel or prosecutorial misconduct claims in a timely filed motion under 28 U.S.C. § 2255. (*Id.* at PageID. 128-29.) On August 22, 2023, the Court sentenced Harris to a term of imprisonment of 50 months, to run concurrent to a state-court sentence. (ECF No. 37.)

The matter is presently before the Court on Harris' § 2255 motion. (ECF No. 38.) In the motion, Harris argues that his conviction violates his Second

Amendment rights and that his counsel was ineffective in failing to assert this Second Amendment challenge. (*Id.*) The motion is fully briefed.[1] (ECF Nos. 42, 44.) For the reasons set forth below, the Court denies the motion.

## I. Ineffective Assistance of Counsel

A defendant claiming ineffective assistance of counsel "must establish two things." *Bullard v. United States*, 937 F.3d 634, 661 (6th Cir. 2019) (quoting *Monea v. United States*, 914 F.3d 414, 419 (6th Cir. 2019)). "First, that [his] attorney's performance fell below 'prevailing professional norms.'" *Id.* (quoting *Monea*, 914 F.3d at 419). "And second, that the attorney's poor performance prejudiced [his] case." *Id.* (quoting *Monea*, 914 F.3d at 419). The court need not address both elements. *Id*.

The Court focuses on prejudice here because it concludes, as discussed below, that the results of the proceedings would not have been different even if Harris' counsel had challenged the felon-in-possession charges on Second Amendment grounds.

---

[1] On September 23, 2024, following the Sixth Circuit's decision in *United States v. Williams*, 113 F.4th 637 (2024), this Court issued an order for supplemental briefing on the issue of Harris' "dangerousness." (*See* ECF No. 43.) Neither party heeded the Court's request. Nevertheless, the Court does not wish to delay resolving Harris' motion any longer and will proceed, because it finds it can, without the benefit of the requested briefing.

2

## II.  Second Amendment Framework

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.  In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), the Supreme Court established a two-step framework for analyzing whether an individual's Second Amendment rights were violated and held that the regulation of those rights must be consistent with the "Nation's historical tradition of firearm regulations."  *Id*. at 17.

To assess the constitutionality of a firearms regulation under the new framework in *Bruen*, the Court must follow a two-step approach.  First, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct."  *Id*. at 17.  Second, when a regulation burdens such presumptively protected conduct, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation."  *Id.*

### A.  *Bruen* Analysis of § 922(g)(1)

*United States v. Williams*, 113 F.4th 637 (6th Cir. 2024), recently clarified the impact of *Bruen* on Sixth Circuit precedent concerning the constitutionality of § 922(g)(1).  The *Williams* court began its *Bruen* analysis by thoroughly reviewing the plain text of the Second Amendment.  *Id.* at 648-650.

3

The court rejected the argument that usage of terms such as "law-abiding" and "responsible" in *Bruen* and earlier Supreme Court case law justify barring felons from exercising their Second Amendment rights. *Id.* at 645-647. Instead, the court pointed to *Heller*'s direct assertion that the right to bear arms "belongs to all Americans" and not an "unspecified subset." *Id.* at 646 (citing *District of Columbia v. Heller*, 554 U.S. 570, 580 (2008)). Ultimately, the Sixth Circuit found that the Second Amendment presumptively protects a felon's right to possess a firearm and thus, passed to the second step of the *Bruen* analysis. *Id.* at 649.

The court then conducted an extensive historical analysis, as required by *Bruen*, and reached the conclusion that "our nation's history and tradition demonstrate that Congress may disarm individuals they believe are dangerous." 113 F.4th at 657. The Sixth Circuit found that, in light of the nation's history and tradition, "most applications of § 922(g)(1) are constitutional" and the statute is constitutional on its face and "as applied to dangerous people." *Id.* at 646. However, the court left open the possibility of an as-applied challenge should a defendant prove he is not dangerous "and thus falls outside of § 922(g)(1)'s constitutionally permissible scope[.]" *Id.* It is the role of the district court to make this dangerousness determination.

4

B.  *Williams* Framework

The *Williams* court then provided three categories under which to view a defendant's past conduct to guide the dangerousness analysis.  In the first category are crimes against the person, such as "murder, rape, assault, and robbery."  *Williams*, 113 F.4th at 658.  The court noted that a history of violent crimes like these are "strong evidence that an individual is dangerous."  *Id.*

In the second category are crimes that, "while not strictly crimes against the person, may nonetheless pose a significant threat of danger," such as drug trafficking and burglary.  *Id.* at 659.  The court also implied that a prior conviction for felon in possession of a firearm falls into this second category.  *Id.* at 662.  The court stated that convictions for these crimes will often "put someone's safety at risk, and thus, justify a finding of danger."  *Id*. at 659.  The court emphasized that a person who falls into the first two categories will have a very difficult time showing he or she is not dangerous.  *Id.*

In the final category are "crimes that cause no physical harm to another person or the community," such as mail fraud and making false statements.  *Id.* The court stated that these cases are a "more difficult category," but that district courts will likely "have no trouble concluding that many of these crimes don't make a person dangerous."  *Id.*

When evaluating a defendant's dangerousness, a court may consider a defendant's entire criminal record—not just the specific felony underlying the § 922(g)(1) charge. *Id.* Courts may also consider any evidence of past convictions in the record, as well as other judicially noticeable information, when assessing a defendant's dangerousness. *Id.* at 660. However, the question of what information is relevant to determine dangerousness and the weight to give such evidence was intentionally left open by *Williams*.

Nevertheless, the Sixth Circuit compared the assessment to dangerousness determinations made under 18 U.S.C. §§ 3142 and 3553. *Id.* at 657. The dangerousness determination must be "fact-specific, depending on the unique circumstances of the individual defendant." *Id.* at 661. The defendant bears the "extremely heavy" burden of showing that he is not dangerous. *Id.* at 658, 662.

Since *Williams*, when determining dangerousness, the Sixth Circuit has considered both the conduct which led to the defendant's § 922(g)(1) charge and whether the defendant was on supervised release when he or she accumulated the charge. *See United States v. Vaughn*, No. 23-5790, 2024 WL 4615853 at *2 n.2 (6th Cir. Oct. 30, 2024) (concluding that "[t]he fact that Vaughn's § 922(g)(1) conviction resulted from an incident where he shot at an individual certainly would lend to a showing of his dangerousness"); *see also United States v. Goins*, 118

6

F.4th 794, 798 (6th Cir. 2024) (finding disarming individuals on parole, probation, or supervised release to be consistent with the nation's history and tradition).

### III. Analysis

To the extent Harris asserts a facial challenge to § 922(g)(1), such a challenge is foreclosed by *Williams*. The Court also finds the statute constitutional as applied to him. Using *Williams'* framework, the Court finds that Harris is dangerous and can be constitutionally disarmed.

On August 8, 2020, Harris was on probation for assaulting a 14-year old boy and resisting and obstructing police when he carried a loaded, stolen firearm and fled the police. (*See* ECF No. 30 at PageID. 164-65, 171.) The officers' discovery of the weapon when they seized Harris led to Count 2 of the Indictment in this matter, to which Harris pleaded guilty. His prior assault conviction, which involved striking the boy in the face twice with a closed fist, falls in *Williams'* first category. (*See id*.) The fact that Harris was on probation is also relevant to finding him dangerous. *See United States v. Clay*, No. 24-cr-20358, 2025 WL 36157, at *2 (E.D. Mich. Jan. 6, 2025) (Parker, J.) (citing *Goins*, 118 F.4th 794) (considering relevant to a finding of dangerousness that the defendant was on supervised released when he accumulated the § 922(g)(1) charge).

Moreover, "[f]leeing from police while in possession of a firearm involves conduct dangerous to the officers and the public." *United States v. Brown*, No. 24-

20227, 2024 WL 5161946, at *4 (E.D. Mich. Dec. 18, 2024) (Behm, J.) (collecting cases). Harris not only fled from police in connection with the conduct leading to Count Two of the Indictment, but he also fled from police in connection with the conduct leading to Count One.

Late in the evening of November 8, 2022, when officers responded to a report of a group of men attempting to break into one of two vehicles on the side of the Southfield Freeway, Harris evaded the officers' attempt to detain him by running across three lanes of the freeway, over the middle concrete median, across the three lanes of the freeway traversing the opposite direction, up the grass median, and across the service drive. (ECF No. 30 at PageID. 166-67.) He failed to heed the officers' commands to stop, and was only detained after hiding in an abandoned house, jumping out of a second-story window, and then vaulting a chain link fence. (*Id.*) A loaded firearm was found inside Harris' vehicle. (*Id.* at PageID. 167-68.)

Also relevant to Harris' dangerousness is the conduct underlying the felon-in-possession charge to which he pleaded guilty. *See Vaughn*, 2024 WL 4615853 at *2 n.2. This charge arose from an incident on August 8, 2020, when Harris drove his motorcycle on a barricaded street in Greektown, going through a fence put up to keep motorists out, and nearly striking police officers trying to stop him. (ECF No. 30 at PageID. 164.) Harris then attempted to flee as officers on foot

approached him, but he was stopped by a fence barricade. (*Id.*) A nine-millimeter semiautomatic pistol was found in Harris' possession. (*Id*. at PageID. 165.) It was loaded and reported stolen. (*Id.*)

Further, Harris has another prior conviction within *Williams*' first category—assault with intent to do great bodily harm less than murder. (*Id.* at PageID. 168.) He also has a prior conviction for narcotics trafficking, which falls within *Williams*' second category. (*See id.* PageID. 170.) With respect to the first conviction, Harris and other individuals kidnapped a 16-year old boy at gunpoint, took the boy to a residence where he was stripped of his clothed, beaten with guns, and attacked by Pitbull dogs. (*See id.* at PageID. 168.)

### IV. Conclusion

Harris' prior criminal record and the facts underlying the charges and his conviction in the present matter support a finding of dangerousness. As a result, he was lawfully prohibited from possessing firearms. Therefore, even if Harris' counsel had challenged the felon-in-possession charges on Second Amendment grounds, the result of the proceedings would not have been different. In other words, even if Harris could show that his counsel's performance fell below

prevailing professional grounds due to his failure to raise a Second Amendment challenge to the § 922(g)(1) charges, this did not prejudice Harris.[2]

Accordingly,

**IT IS ORDERED** that Defendant's motion pursuant to 28 U.S.C. § 2255 (ECF No. 38) is **DENIED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: April 14, 2025

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, April 14, 2025, by electronic and/or U.S. First Class mail.

s/Aaron Flanigan
Case Manager

---

[2] Although the Court finds it unnecessary to address the first prong of Harris' ineffective assistance claim, the Sixth Circuit has "repeatedly held that counsel is not ineffective for failing to predict developments in the law." *Bullard v. United States*, 937 F.3d at 661 (quoting *Snider v. United States*, 908 F.3d 183, 192 (6th Cir. 2018)). The Supreme Court has repeatedly emphasized that certain firearm regulations, including prohibitions on the possession of firearms by felons, are constitutional. *See District of Columbia v. Heller*, 554 U.S. 570, 626 (2008); *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010); *Bruen*, 597 U.S. at 72 (Alito, J., concurring).